**Lieff**
**Cabraser**
**Heimann &**
**Bernstein**
Attorneys at Law

Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
t 212.355.9500
f 212.355.9592

November 15, 2013

Steven E. Fineman
Managing Partner
sfineman@lchb.com

**VIA ECF AND HAND DELIVERY**

The Honorable Naomi Reice Buchwald, U.S.D.J.
500 Pearl Street
New York, NY 10007

        RE:    *The Charles Schwab Corp., et al. v. Bank of America Corp., et al.*,
                No. 13-cv-7005-NRB (included in Master File No. 11-MD-2262-NRB)

Dear Judge Buchwald:

        Contrary to Defendants' arguments, neither the Edge Act nor the FSIA supports removal.

        **1.**    **Defendants' broad reading of the Edge Act conflicts with Second Circuit law.**

        Defendants incorrectly contend the Edge Act applies because (i) "the setting of LIBOR" occurred abroad and (ii) Plaintiffs transacted in "instruments based on LIBOR." Defs.' Ltr. at 1.

        First, Defendants ignore that whether this case arises out of international or foreign "transactions" or "financial operations" turns on the activities of Bank of America, N.A.; Citibank, N.A.; and JPMorgan, N.A. (the "National Bank Defendants"). *See Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 784 (2d Cir. 2013) ("*AIG*").[1] That the actual "setting" of LIBOR may have occurred in London says nothing about the origin of those U.S.-based banks' submissions, which Plaintiffs allege were false. Indeed, because the U.S.-LIBOR Panel Banks submit their quotes "electronically" each day,[2] the National Bank Defendants likely submitted their quotes from the U.S., where they do business. Defendants do not suggest otherwise. Because the Court "must construe all disputed questions of fact and controlling substantive law in favor of the plaintiff[s],"[3] Defendants' argument based on the "setting" of LIBOR must be rejected.

        Second, the National Bank Defendants' "participation in the USD LIBOR panel" does not constitute a "financial operation" under the Edge Act. Participating in the LIBOR Panel, including submitting LIBOR quotes, does not fall within the "usual meaning" of "financial operations," i.e., "those operations that provide . . . capital or loan money as needed to carry on business." *Racepoint Partners, LLC v. JPMorgan Chase Bank*, No. 06 Civ. 2500 (MGC), 2006 U.S. Dist. LEXIS 78046, at *8 (S.D.N.Y. Oct. 26, 2006) (ellipsis in original). Defendants' interpretation would greatly expand a statute meant to be narrowly construed. Because Plaintiffs allege that Defendants and others paid unlawfully suppressed rates of return on financial instruments based on *U.S.-Dollar* LIBOR and purchased by Plaintiffs *in the U.S.*, the Edge Act does not apply.[4]

---

[1] Contrary to Defendants' contention, *AIG* addresses both "transactions" and "financial operations." *See id.*

[2] *See* http://ec.europa.eu/internal_market/consultations/2012/benchmarks/registered-organisations/thomson-reuters_en.pdf.

[3] *Sealink Funding Ltd. v. Bear Stearns & Co.*, No. 12 Civ. 1397 (LTS)(HBP), 2012 U.S. Dist. LEXIS 145418, at *6 (S.D.N.Y. Oct. 9, 2012). All internal case citations and quotation marks have been omitted from this letter-brief.

[4] Plaintiffs do not "concede[]" that the setting of LIBOR constitutes an "international transaction" under the Edge Act (Defs.' Ltr. at 2 n.2). The mere setting of LIBOR, or the fact that financial instruments are based on it, does not qualify as an international or foreign "transaction" or "financial operation" by the National Bank Defendants, as the Act requires.

The Honorable Naomi Reice Buchwald
November 15, 2013
Page 2

### 2. Defendants' arguments regarding the FSIA lack merit.

The FSIA also does not serve as a basis for removal.

First, because Section 22(a) of the Securities Act applies only to claims relating to alleged false or misleading statements in connection with securities offerings, while 28 U.S.C. § 1441(d) encompasses claims of any type against foreign states, Section 22(a)—the more "narrow, precise, and specific" provision—controls. *See Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976). Even more fundamentally, giving full effect to Section 22(a) would not "unduly interfere" with Section 1441(d)'s operation, as Section 22(a) "will have no impact whatever upon the vast majority of lawsuits" subject to Section 1441(d). *Id.* at 155, 156.[5]

Second, Defendants' timeliness arguments are unavailing. The one-year statute of limitations has been tolled by the class case filed by the Over-the-Counter Plaintiffs, and also by the Bondholder Plaintiffs' class case (which has always included RBS), even though they do not assert Securities Act claims. *See, e.g., Benfield v. Mocatta Metals Corp.*, 26 F.3d 19, 23 (2d Cir. 1994) (*American Pipe* tolling applied where "a sufficient commonality" between claims existed); Defs.' Notice of Tag-Along Action in MDL No. 2262 (attached as Ex. 1) at ¶ 13 (stating the alleged manipulation underlying the Schwab Plaintiffs' claims "is substantially similar, if not identical" to other MDL plaintiffs' allegations). Additionally, while the Second Circuit recently ruled that the three-year statute of "repose" is not subject to *American Pipe* tolling, a petition for Supreme Court review to resolve the circuit split on that issue is forthcoming. *See Pub. Emps.' Ret. Sys. of Miss. v. IndyMac MBS, Inc.*, U.S. Sup. Ct. Dkt. No. 13A270 (petition due Nov. 22, 2013).[6]

Third, even if the Court determines that the FSIA applies, it should remand the claims against the 19 non-"foreign state" Defendants. While courts are split on this question, the Fourth Circuit's reasoning in *Schlumberger Industries, Inc. v. National Surety Corp.*, 36 F.3d 1274 (4th Cir. 1994), is persuasive. Specifically, interpreting the term "action" in Section 1441(d) to mean "entire case" would render Plaintiffs' claims against the non-foreign-state Defendants subject to a non-jury trial (as per Section 1441(d)), raising "serious constitutional questions." *Id.* at 1283. Furthermore, *Credit Lyonnais S.A. v. Korea Asset Management Corp.*, 111 F. App'x 44 (2d Cir. 2004) (summary order), on which Defendants rely, *undermines* their argument that Section 1441(d) itself affords pendent-party jurisdiction, as such jurisdiction "was properly exercised" there *under 28 U.S.C. § 1367*—which Defendants have not invoked, and cannot now. *Id.* at 45 n.1; *see also* Notice of Removal (attached as Ex. 2) at 3; *Arancio v. Prudential Ins. Co.*, 247 F. Supp. 2d 333, 337 (S.D.N.Y. 2002) ("A notice of removal may not be untimely amended to add a new avenue of jurisdiction.").

Respectfully submitted,

Steven E. Fineman

cc:  All Counsel of Record (via ECF and e-mail)

---

[5] Accordingly, *California Public Employees' Retirement System v. WorldCom, Inc.*, 368 F.3d 86 (2d Cir. 2004), in which the Court reasoned that "[w]ere Section 22(a) construed to trump Section 1452(a) [the bankruptcy removal provision], Section 22(a) could interfere with the operation of the Bankruptcy Code" (*id.* at 103), is inapposite.

[6] Plaintiffs therefore request that if this Court determines that Plaintiffs' remand motion turns on whether the statute of "repose" has been tolled, the Court refrain from ruling on the motion pending a determination by the Supreme Court as to whether to grant cert. and, if cert. is granted, a decision.